```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- x
UNITED STATES OF AMERICA,                       :
                                                :
            -against-                           :
                                                :         MEMORANDUM AND ORDER
SABA ROSARIO VENTURA,                           :              17-CR-418 (DLI)
                                                :
            Defendant.                          :
---------------------------------------------------------- x
```

**DORA L. IRIZARRY, Chief United States District Judge:**

Defendant Saba Rosario Ventura was indicted by a grand jury of the Eastern District of New York on August 4, 2017, and charged with one count of illegally reentering the United States in violation of 8 U.S.C. § 1326(b)(2). On August 14, 2017, United States Magistrate Judge Victor V. Pohorelsky set conditions for Defendant's release on bond pending trial. On August 16, 2017, the Government unsuccessfully appealed the magistrate judge's bail decision to this Court. Immediately upon satisfying his bond conditions, Defendant was arrested by the Bureau of Immigration and Customs Enforcement ("ICE") of the United States Department of Homeland Security ("DHS"), pursuant to an ICE detainer. Defendant remains in custody in the Hudson County jail and has appeared before this Court by writ *ad prosequendum* to address the instant charge.

Before the Court is Defendant's motion to compel ICE to release him pursuant to the conditions set by the magistrate judge, or, in the alternative, to dismiss the indictment with prejudice. The Court held oral argument on the motion on October 16, 2017. For the reasons that follow, Defendant's motion is granted. The Government is ordered to release Defendant or to dismiss the indictment with prejudice by **3:00 p.m. on November 9, 2017**, and to inform the Court of its decision by such time.

## BACKGROUND

Defendant arrived at John F. Kennedy International Airport ("JFK") from Santo Domingo, Dominican Republic on April 7, 2017. *See* Govt.'s Mem. of Law in Opp'n to Def.'s Mot. to Dismiss the Indictment if Not Released from ICE Custody ("Mem. in Opp'n") at 2-3, Dkt. Entry No. 25; Affirmation of Michelle A. Gelernt ("Gelernt Affirm'n") ¶ 3, Dkt. Entry No. 22-1. Defendant presented a valid Dominican passport and a United States Permanent Resident Identification Card that just had expired the previous day. *Id*. A Customs and Border Protection ("CBP") official determined that Defendant had been removed from the United States previously and took him into custody. *Id*. CBP immediately notified the United States Attorney's Office for the Eastern District of New York of the potential case, and the Government accepted the case for prosecution the same day. *See* Form I213, Exh. A to Gelernt Affirm'n ("Exh. A") at 6, Dkt. Entry No. 23-1. Also that day, Defendant was arraigned on a complaint charging him with illegally reentering the United States in violation of 8 U.S.C. § 1326(b)(2), and ICE lodged a detainer against him. *See* Gelernt Affirm'n ¶ 4; Mem. in Opp'n at 3.

After a period of plea negotiations, during which Defendant was detained at the Metropolitan Detention Center ("MDC"), the Government presented the case to a grand jury of this district, which returned the instant indictment on August 4, 2017. *See* Mem. in Opp'n at 3. When Defendant was arraigned on the indictment before Magistrate Judge Pohorelsky on August 14, 2017, Defendant made a bail application for the first time. *See* Gelernt Affirm'n ¶ 7. The magistrate judge set conditions of release on bond. *Id.* ¶ 8. The Government appealed the magistrate judge's bond determination, and this Court affirmed the determination on August 16, 2017. *See* 8/16/2017 Min. Entry. Although Defendant met the bail conditions and was released from criminal custody, he immediately was taken into immigration custody, where he remains

pending determination of this motion. *See* Mem. in Opp'n at 3; Gelernt Affirm'n ¶ 9.

## QUESTION BEFORE THE COURT

The Bail Reform Act, 18 U.S.C. § 3141, *et seq.*, governs the pretrial detention of most individuals charged with federal criminal offenses. The Immigration and Nationality Act, 8 U.S.C. § 1101, *et seq.*, ("INA") governs the detention of individuals who enter the United States without lawful permission to do so. Federal prosecutors must comply with the Bail Reform Act when prosecuting an individual for a federal offense. ICE must comply with the INA when seeking to remove and deport an individual. This case addresses the problem that arises when these Executive Branch agencies seek to prosecute and remove an individual simultaneously. The question before the Court, which, to date, has not been addressed by the Second Circuit Court of Appeals, is whether Defendant may be held in ICE custody while his prosecution by the U.S. Attorney's Office is pending.

## DISCUSSION

The Bail Reform Act "generally favors bail release…." *United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007). Indeed, the law "requires a court to order the pre-trial release of a defendant on a personal recognizance bond unless the court determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." *Id*. (internal quotations and brackets omitted); 18 U.S.C. § 3142(b). "Only if a detention hearing shows that no condition or combination of conditions will reasonably assure the appearance of the person as required shall the court order the detention of the person before trial." *Id*. (internal quotations and brackets omitted); 18 U.S.C. § 3142(e).

In *United States v. Trujillo-Alvarez*, a district court was presented for the first time with a defendant who was ordered released under the Bail Reform Act, and then taken into ICE custody

pursuant to an ICE detainer obtained under the INA. *See generally*, *United States v. Trujillo-Alvarez*, 900 F. Supp.2d 1167 (D. Or. 2012). While acknowledging that "[t]he government may be correct that ICE retains the ability to take [the defendant] back into administrative custody – for the purpose of deporting him," the court held that "nothing permits ICE (or any other part of the Executive Branch) to disregard the congressionally mandated provisions of the [Bail Reform Act] by keeping a person in detention for the purpose of delivering him to trial when the [Bail Reform Act] itself does not authorize such pretrial detention." *Id*. at 1178. Indeed, the text of the Bail Reform Act dictates that, if ICE does not take custody of a removable alien before the arrestee's detention hearing, the alien must be treated as would be any other individual awaiting trial. *See* 18 U.S.C. § 3142; *United States v. Galitsa*, No. 17-CR-324 (VEC), Dkt. Entry No. 30, at 7 (S.D.N.Y. July 28, 2017); *Trujillo-Alvarez*, 900 F. Supp.2d at 1179. In other words, "the Bail Reform Act provides the exclusive means by which the Government may detain a removable alien pending trial in a criminal case." *Galitsa*, No. 17-CR-324, at 5. Numerous other district courts agree. *See Id.* at 6 n.4 (collecting cases).

The Government here argues that the *Trujillo-Alvarez* line of cases does not preclude the criminal prosecution and removal proceedings from proceeding on parallel tracks. *See* Mem. in Opp'n at 8-9. The Government reasons that, if the criminal proceedings and the removal proceedings proceed in tandem, then the existence of the criminal proceedings, which triggers the Bail Reform Act, does not preclude the use of an ICE detainer as part of the removal proceedings. *Id*.

The Government cannot and should not have it both ways. The United States Attorney's Office and ICE/DHS are part of one Executive Branch. As such, the Executive Branch should decide where its priorities lie: either with a prosecution in federal district court or with removal

4

of the deportable alien. Courts "addressing the possibility of deportation during a criminal prosecution have explained that the Executive Branch has two choices when an alien unlawfully present in the United States after prior removal is facing criminal prosecution: The DHS may proceed administratively with deportation, or defer removal for the alien to face criminal prosecution." *United States v. Resendiz-Guevara*, 145 F. Supp.3d 1128, 1136 (M.D. Fla. 2015) (citing cases). What the Government cannot do is "proceed on a dual criminal prosecution and deportation track…." *Id.* (quoting *United States v. Blas*, No. 13-CR-178 (WS)(C), 2013 WL 5317228, at *7 n.12 (S.D. Ala. Sept. 20, 2013)) (internal quotations omitted).

Although "the Secretary of Homeland Security has some discretion in these cases to either deport the defendant or prosecute him[,] once the Secretary opts for prosecution over deportation…and invokes the jurisdiction of [the district court], [the district court] has priority or first standing and administrative deportation proceedings must take a backseat to court proceedings until the criminal prosecution comes to an end." *Blas*, 2013 WL 5317228, at *3. Moreover, at least one U.S. Attorney's Office has conceded as much. *See United States v. Hernandez-Bourdier*, No. 16-CR-222-2, 2017 WL 56033, at *10 (W.D. Pa. Jan. 5, 2017) ("The government asserted that although it advised the court defendant could be detained by ICE if released [pursuant to the Bail Reform Act], several decisions show that once an order of release is entered in a criminal case, ICE is unable to take custody of the defendant.")

Here, the Executive made its decision in favor of prosecution, rather than expeditious removal. Once the U.S. Attorney's Office accepted the case for prosecution and arraigned the Defendant, all on the same day that Defendant arrived at JFK, the Bail Reform Act applied to Defendant. At oral argument, the Government stated that, although it "can't speak with specificity to the precise reasons" ICE might have for its detention of Defendant, "it could be that ICE

5

disagrees with the two decisions by this Court as to the defendant's risk of flight…" Hr'g Tr. at 30. This affront to the mandates of the Bail Reform Act and the legislative intent reflected therein, designed to protect the constitutional rights of liberty and due process accorded to all individuals charged with criminal offenses, is particularly troubling.

The potential for ICE to insert itself into criminal proceedings and challenge a district court's bond determination in a manner not provided for in the Federal Rules of Criminal or Appellate Procedure, the Bail Reform Act, or any other statute, is one of the conflicts the *Trujillo-Alvarez* line of cases seeks to resolve. "What [the Government] cannot do is treat the United States Code like a take-out food menu whereby the Government can mix-and-match from column A (prosecution or removal) and from column B (Bail Reform Act or ICE detention rules)." *Galitsa*, No. 17-CR-324, at 9-10. In other words, once prosecution is the Government's chosen course of action, the Executive may not attempt to obviate the bond determination of this Court by enforcing the ICE detainer. Accordingly, the Government now must make a choice. It can continue down the path it originally chose, namely to prosecute Defendant, or it can seek Defendant's removal from the United States and continue his detention by ICE. It cannot do both. As such, Defendant's motion is granted. The Government either must release Defendant under the bond conditions set in this case and continue the instant prosecution, or dismiss the indictment with prejudice, forego its illegal reentry prosecution, and proceed with Defendant's removal.

## CONCLUSION

Defendant's motion is granted.  Accordingly, it is hereby ORDERED that **NO LATER THAN 3:00 p.m. ON NOVEMBER 9, 2017**, the Government must release Defendant on the bond conditions previously set by this Court **OR** dismiss the instant indictment with prejudice and inform the Court of its decision.


SO ORDERED.

Dated:  Brooklyn, New York
       November 3, 2017

                                                  /s/
                                     DORA L. IRIZARRY
                                        Chief Judge