UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
UNITED STATES OF AMERICA, :
:
-against- :
: **MEMORANDUM AND ORDER**
SABA ROSARIO VENTURA, : **17-cr-418 (DLI)**
:
Defendant. :
-------------------------------------------------------------- x

**DORA L. IRIZARRY, United States District Judge:**

On August 4, 2017, Defendant Saba Rosario Ventura ("Defendant") was charged by indictment with one count of reentering the United States illegally on April 7, 2017 in violation of 8 U.S.C. § 1326(b)(2).[1] Indictment, Dkt. Entry No. 12; *See also*, M&O at 1. On August 14, 2017, Defendant was released on bond pending trial on conditions set by the Honorable Victor V. Pohorelsky, United States Magistrate Judge of this Court (Ret.). Minute Entry dated August 14, 2017, Dkt. Entry No. 15; *See also*, M&O at 2. However, immediately following his release, he was arrested and returned the same day to the Bureau of Prison's Metropolitan Detention Center in Brooklyn, New York ("MDC") pursuant to an Immigration and Customs Enforcement ("ICE") detainer that was lodged against him. *Id.*; *See also*, ICE Detainer, Dkt. Entry No. 23-6. On August 15, 2017, Defendant was transferred from the MDC to ICE custody and served with a Notice to Appear for a Removal Hearing from the Department of Homeland Security ("DHS"). *See*, DHS Notice to Appear, Dkt Entry No. 23-7.

On August 16, 2017, the Government appealed the bond determination of the magistrate

---

[1] The Court assumes familiarity with the procedural history and facts of this case. A more robust recitation of the facts is included in the Court's prior Memorandum and Order issued on November 3, 2017 dismissing the indictment if the Government did not release Defendant by November 9, 2017. *See*, Memorandum and Order granting Defendant's Motion to Dismiss the Indictment ("M&O"), Dkt. Entry No. 28.

judge to this Court, which it affirmed after hearing arguments from the parties. Minute Entry dated August 16, 2017; *See also*, Transcript from August 16, 2017 Proceeding ("Aug. 2017 Tr."), Dkt. Entry No. 36. However, Defendant remained in ICE custody. On September 7, 2017, Defendant moved for an order to compel ICE to release him pursuant to the previously imposed bond conditions or dismiss the indictment with prejudice, which the Government opposed. *See*, Mot. to Dismiss Indictment, Dkt. Entry No. 22; Mem. of Law in Support of Mot. to Dismiss, Dkt. Entry No. 23; Gov't Opp'n to Mot. to Dismiss, Dkt. Entry No. 25; Def. Mot. to Dismiss Reply, Dkt. Entry No. 26. On October 16, 2017, the Court held oral argument on Defendant's motion. Minute Entry dated October 16, 2017; *See also,* Transcript from October 16, 2017 Proceeding ("Oct. 2017 Tr."), Dkt. Entry No. 30-1.[2]

On November 3, 2017, the Court granted Defendant's motion and ordered the Government to release Defendant on the bond conditions previously set or dismiss the instant indictment with prejudice and inform the Court of its decision by no later than November 9, 2017. *See,* M&O. On November 7, 2017, the Government requested that the Court stay its order to permit the Government to explore the possibility of an appeal and Defendant opposed that request. Gov't Ltr., Dkt. Entry No. 29; Def. Opp'n Ltr., Dkt, Entry No. 30. On November 8, 2017, the Court denied the Government's request for an indefinite stay. Summ. Order, Dkt. Entry No. 32.

On November 9, 2017, the Government informed the Court that ICE was not prepared to release Defendant. Gov't Ltr, Dkt. Entry No. 33. Accordingly, the Court dismissed the indictment with prejudice. Electronic Order dated November 9, 2017.

On December 4, 2017, the Government filed a notice of appeal. Notice of Appeal, Dkt. Entry No. 35. The Second Circuit remanded the case as the Circuit was "unable to determine"

---

[2] The transcript is annexed to a letter filed by Defendant. *See,* Dkt. Entry No. 30.

2

whether the Court's decision rested on a finding that Defendant's continued detention by ICE following the entry of the court's order releasing Defendant under the Bail Reform Act ("BRA") was "pretextual, in bad faith, or otherwise undertaken with the illegitimate purpose of detaining [Defendant] for criminal prosecution and not to effectuate his removal." *United States v. Ventura*, 747 F. App'x 20, 21 (2d Cir. 2018). The Circuit decided that "a *Jacobson* remand for the purpose of supplementing the record on this sole issue [was] appropriate." *Id.* (citing *United States v. Jacobson*, 15 F.3d 19, 22 (2d Cir. 1994)). Thus, the Circuit directed this Court to "clarify, and explicate its rationale therefor, whether its observation that DHS's continued detention constituted an affront to the mandates of the Bail Reform Act and a potential attempt to obviate the bond determination of this Court, was tantamount to a finding of pretext or bad faith such that the ICE detention constituted a direct violation of the magistrate judge's order." *Id.* at 22.

On September 25, 2018, the Court held a conference and, after conferring with parties, ordered simultaneous briefing on the issues raised by the Circuit, which the parties subsequently submitted. *See,* Minute Entry dated September 25, 2018; *See also,* Gov't Br., Dkt. Entry No. 38; Def. Br., Dkt. No. 39; Gov't Opp'n, Dkt. Entry No. 40; Def. Opp'n, Dkt. No. 41. On December 10, 2018, the Court held oral argument. Minute Entry dated December 10, 2018. On January 30, 2019, a status conference was held and the parties were requested to submit a joint letter discussing cases in this District with similar issues that were decided subsequent to this case and the outcome of those cases. *See,* Minute Entry dated January 30, 2019. The parties submitted that joint letter and each party also submitted three letters concerning relevant supplemental authorities. *See,* Dkt. Entry Nos. 42-48.

As discussed below, the Court clarifies that Defendant's detention by ICE was in direct violation of the magistrate judge's bond determination, and that the reason for Defendant's

detention by ICE was pretextual, in bad faith or otherwise undertaken with the illegitimate purpose of detaining Defendant for criminal prosecution as opposed to removal.[3]

## DISCUSSION

The Second Circuit has set forth a procedure "for seeking supplementation of a record without a formal remand or the need for a new notice of appeal[.]" *United States v. Jacobson*, 15 F.3d 19, 22 (2d Cir. 1994); *See, also United States v. Batiz*, No. 20-4113, 2022 WL 619642, at *3 (2d Cir. Mar. 3, 2022); *Florez v. Cent. Intel. Agency*, 829 F.3d 178, 189 (2d Cir. 2016) (collecting cases). Here, in accordance with the Circuit's directive, the Court supplements the record to clarify and explain further its rationale as to why Defendant's continued detention by ICE[4] was pretextual. *See Ventura*, 747 F. App'x at 22; *See also* M&O at 6. As described below, Defendant's detention by ICE was pretextual and in bad faith because its purpose was not for removal, bur rather to detain Defendant pending his criminal trial, as an affront to this Court's bail determination and undermining the Bail Reform Act.

The Court found the Government's motivations were in bad faith and pretextual on several grounds. First, the Government conceded that the detention by ICE could have been premised on its disagreement with the bond determination, indicating that the detention by ICE was pretextual. Specifically, at oral argument on Defendant's motion for release, the Government noted that, notwithstanding the determinations made by two judges of the Eastern District of New York that Defendant was not a flight risk and not a danger to the community, "it could be that ICE disagrees

---

[3] At time of the briefing, Defendant was released in the immigration proceeding pursuant to certain conditions set by an immigration judge at an individualized bail hearing. *See*, Gov't Br. at 2-3.

[4] The Court notes that ICE is the "principal investigative arm" of DHS. *See*, Federal Register, https://www.federalregister.gov/agencies/u-s-immigration-and-customs-enforcement#:~:text=Formed%20by%20the%20merger%20of,agency%20in%20the%20federal%20government (last accessed on Mar. 28, 2023).

4

with the two decisions by this Court as to the [D]efendant's risk of flight[.]" *See*, Oct. 2017 Tr. 30:6-23. The Government notes *ex post facto* that it intended to convey "not that ICE disagreed with the analysis by the Court under BRA, but rather that ICE reached a different result when addressing the question of whether defendant should be at liberty during the pendency of the proceeding under the statutory and regulatory framework that governs that issue under the INA." Gov't Post-Appeal Br. at 9.  The Government asks that its "inartful comments should not, without more, justify a finding of pretext."  It bears noting that an immigration judge granted Defendant bail pending disposition of his removal proceeding, apparently reaching the same conclusions as two judges of this Court did. *See*, FN. 3 above.

While the Court acknowledged at oral argument that, without bringing in the ICE officials there would be no way to know what they were thinking, the Court stressed that the actions of ICE demonstrated that Defendant's detention was "an end run around the Bail Reform Act and the rulings of this Court." *Id.* at 30:24-31:1, 37:5-7, 36:23-37:3, 45:9-13.  The Court explicitly cited this concession by the Government in its M&O to explain why the Government's actions were an affront to the mandates of the BRA. *See*, M&O at 5-6.  However, as explained further below, the Court's finding of pretext does not rest on the Government's comments alone.

Even setting aside the Government's concession, the sequence of events here shows pretext and bad faith.  The chronology demonstrates that the purpose of ICE custody, following the bond determination by the magistrate judge, was not to effectuate removal, but rather to hold the Defendant pending prosecution.  As an initial matter, once ICE determined that Defendant was removed from the United States previously, Defendant could have been turned away at the United States border and returned to the Dominican Republic.  Instead, as noted by the Court in the M&O, the Executive Branch decided in favor of prosecution rather than expeditious removal, which, of

5

course, it was entitled to do. *See,* M&O at 5. ICE contacted the United States Attorney's Office ("USAO") to initiate a criminal proceeding and the USAO accepted the case for prosecution. *Id.* After several months of plea negotiations, the Government filed an indictment against Defendant charging him with illegal reentry. *See generally*, Docket and Indictment. At Defendant's arraignment on the indictment, the Government hotly opposed his bail application claiming that granting bail essentially would "reward" Defendant, but the magistrate judge granted Defendant's bail application and set certain conditions of release. *See,* Minute Entry dated August 14, 2017; *See also,* Transcript from August 14, 2017 Proceeding, Dkt. Entry No. 20 at 8:16-11:10. Defendant posted the bond, but immediately was arrested on an ICE detainer, which heretofore the Government had seen fit not to pursue. *See generally*, M &O at 5-6. At that point, the Government could have removed Defendant forthwith. However, the Government chose to forgo Defendant's summary removal and chose to keep him in ICE custody instead.

This sequence of events borders on the "Kafkaesque," underscoring the evident pretext. *See, United States v. Galitsa*, 2016 WL 11658188, at *2 (S.D.N.Y. July 28, 2016). When the Government chose to detain Defendant in ICE custody after he was granted bail, the Government's purpose was not to remove Defendant, but rather to ensure that Defendant would not be "rewarded." Indeed, "the clearest indication that [Defendant's] detention . . . following his release on bail was not for the purposes of removing him was that" he was not removed. Def. Opp'n at 8. The Government's purpose, as apparent from this sequence of events, was to keep Defendant in custody in an effort to undermine the magistrate judge's application of the BRA, that had been affirmed by this Court, with which the Government disagreed.

Further underscoring the Court's finding of pretext, a review of other similar cases adjudicated during the same approximate timeframe reveals the Government's disparate treatment

6

of other defendants who were similarly situated to Defendant. The contrast in inconsistent approaches by the Government illustrates that the Government chose to detain Defendant in order to circumvent the bond determination and not to effectuate his removal.

For instance, in another case in this district, *United States v. Rodriguez-Chavez,* following the defendant's release on bond, the defendant was subjected to an expediated removal and was not detained to be brought before an immigration judge, unlike Defendant here. *See, United States v. Rodriguez-Chavez*, 18-cr-112 (FB)(E.D.N.Y.), Electronic Order dated June 29, 2018; *See also*, Def. Opp'n at 9. In another case in this district, adjudicated shortly after this one, *United States v. Lopez*, ICE indicated initially that it would release a similarly situated defendant, but ultimately determined it would not release the defendant and the defendant was ordered removed. *See*, *United States v. Lopez*, 17-cr-683 (ENV)(E.D.N.Y.), Dkt. Entry Nos. 19, 22; *See also,* Def. Br. at 10-11. Providing further evidence of inconsistent treatment, in a Southern District of New York case, *United States v. Galitsa*, when confronted with an order similar to the one issued in this case, the Government chose to release the defendant from ICE detention and proceed with the criminal prosecution. *See generally, United States v. Galista*, 17-cr-0324 (VEC)(S.D.N.Y.), Memorandum and Order granting Motion to Dismiss Indictment, Dkt. Entry No. 30    As Defendant notes, when the Government's "actual goal" is removal, it effectuates removal, and here, it has not. *See*, Def. Opp'n at 9.

Other contemporaneous cases from districts outside of the Second Circuit also provide further examples of the Government's inconsistent approach and support the Court's finding of pretext. For instance, in *United States v. Resendiz-Guevara*, the defendant, who also was charged with a single count of illegal reentry, was deported when he was released on bond.[5]  *See, United*

---

[5] In *Resendiz-Guevara*, the Government chose not to appeal the magistrate judge's bond determination, despite being given ten days to do so. *Id.* at 1134.

*States v. Resendiz-Guevara*, 145 F. Supp.3d 1128, 1131-32 (M.D. FL. 2015). In yet another case, *United States v. Trujillo-Alvarez*, the defendant was deported after the Court denied the Government's request for a writ of *habeas ad prosequendum*. *See, United States v. Trujillo-Alvarez*, 12-cr-469 (SI)(D.OR.), Order Dismissing Indictment with Prejudice, Dkt. Entry No 32, Conference Transcript, Dkt. Entry No. 35 at 2:17-24, 3:10-18.

      Furthermore, the Court takes judicial notice of cases on its own docket where individuals similarly situated to Defendant were treated differently, further evidencing pretext.[6] *See,* Def. Br. at 9-10. For instance, in *United States v. Guy*, 14-cr-552, the defendant, a Jamaican national who, while not charged with illegal reentry like Defendant here, was charged with cocaine importation, remained at liberty during his prosecution. *See*, *United States v. Guy,* 14-cr-552 (DLI)(E.D.N.Y.), Order Setting Conditions of Release, Dkt. Entry No. 4; Sentencing Memorandum, Dkt. Entry No. 19. Additionally, in *United States v. Williams*, the defendant, a permanent resident alien arrested at JFK airport and charged with cocaine importation, remained at liberty after being granted bail until her self-surrender following her conviction after a jury trial. *See*, *United States v. Williams*, 16-cr-312 (DLI)(E.D.N.Y.); Complaint, Dkt. Entry No. 1.

      The Government's two arguments against affirmance of the dismissal of the indictment are meritless. In sum, the Government argues that the Court did not include a finding of pretext in the M&O and that the record at the time the M&O was issued would not have supported a finding of pretext. *See,* Gov't Br. First, the Government misconstrues the Second Circuit's directive. *Id.* at 1. Contrary to the Government's assertion, the Second Circuit did not ask the Court to "make clear whether the [M&O] included a 'finding' by the Court that" Defendant's detention by ICE was

---

[6] The Court also notes the list provided by Defendant of a "non-exhaustive sample of other recent cases" in the Eastern District of New York where somewhat similarly situated defendants, *i.e*., "arriving aliens," were granted bail and remained at liberty during their prosecution. *See,* Def. Br. at 10.

8

pretextual.  *Id.*  Rather, the Second Circuit directed this Court "to clarify, and explicate its rationale."  *Ventura*, 747 F. App'x  at 22.  This Court's conclusion was based, in part, on the fact that the Government's actions constituted an affront to the mandates of the BRA, or, in other words, pretext, which the Court has clarified and expounded upon further as requested.  *See* M&O at 6; *See also*, Def. Opp'n at 7.  Second, contrary to the Government's assertion, and as explained above, the record before the Court amply supported a finding of pretext and intent to undermine the magistrate judge's application of the Bail Reform Act.

Finally, while the Court is aware and mindful of further legal developments concerning the issues addressed herein, they do not affect this Court's analysis or alter this Court's findings.  In *United States v. Lett*, 944 F.3d 467 (2d Cir. 2019), the Second Circuit held that there is no conflict between the detention-and-release provisions of BRA and INA and that "immigration authorities may lawfully detain a criminal defendant ordered to be released under BRA" pursuant to their authority under INA.  *Id.* at 469.  However, and significantly as pertinent to the instant matter, the Second Circuit explicitly held that the defendant's pretext argument had been waived and the Circuit declined to address it.  *Id.* at 473 ("Accordingly, Lett's pretext argument is waived, and we need not address it.").  As such, this case falls outside of the holding in *Lett* because the Circuit did not address the issue that was before this Court initially and on remand.

Similarly, two cases from other circuits that are consistent with *Lett* do not alter the Court's determination.  *See, Lett*, 944 at 470–71 (collecting cases, including *United States v. Vasquez-Benitez*, 919 F.3d 546 (D.C. Cir. 2019) and *United States v. Soriano Nunez*, 928 F.3d 240 (3d Cir. 2019)); *See also*, Dkt. Entry Nos. 43, 44, 45, 46.  Notably, as in *Lett,* the D.C. Circuit Court found that Vasquez-Benitez had waived or defaulted on any argument that his detention was not required under 8 U.S.C. § 1231(a)(5).  However, here, Defendant always has maintained that detention was

9

not required by the different statute applicable to him, *i.e.*, 8 U.S.C. § 1225(b)(2)(A); nor was it customary to require detention in illegal reentry cases in this district. Indeed, the *Vasquez-Benitez* decision lends support to this Court's position here: "So long as ICE detains the alien for the permissible purpose of effectuating his removal and *not to skirt the Court's decision in setting the terms of his release* under the BRA, ICE's detention does not offend" constitutional or statutory principles. *Vasquez-Benitez*, 919 F.3d 546, 552 (emphasis added; internal quotation marks and alterations omitted).

## CONCLUSION

For the reasons set forth above, the Court finds that Defendant's detention by ICE was an affront to the mandates of the Bail Reform Act, a potential attempt to obviate the bond determinations of two judges of this Court, and that such pretext and bad faith by the Government in keeping Defendant in ICE detention was a direct violation of the magistrate judge's bail order that was affirmed by this Court.

SO ORDERED.

Dated: Brooklyn, New York
April 5, 2023

/s/
DORA L. IRIZARRY
United States District Judge