UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

UNITED STATES OF AMERICA,

-against-

SABA ROSARIO VENTURA,

Defendant.

---------------------------------------------------------------x

**MEMORANDUM AND ORDER**
17-cr-418 (DLI)

**DORA L. IRIZARRY, United States District Judge:**

On August 4, 2017, a grand jury of this district returned an indictment charging Defendant Saba Rosario Ventura ("Defendant") with illegal reentry into the United States of America in violation of 8 U.S.C. §§ 1326(a) and (b)(2). *See*, Indictment, Dkt. Entry No. 12. On June 10, 2024, Defendant renewed his motion to dismiss the indictment pursuant to Fed. R. Crim. P. 12 ("Rule 12"). *See*, Mot. to Dismiss Indictment ("Mot."), Dkt. Entry No. 59. The Government opposed. Opp'n to Mot. ("Opp'n"), Dkt. Entry No. 60. Defendant replied. Reply to Opp'n ("Reply"), Dkt. Entry No. 61. For the reasons set forth below, Defendant's motion is denied.

## BACKGROUND[1]

The material facts are not in dispute. *See*, Mot. at 2–14; Opp'n at 1–7; Reply at 1. Defendant immigrated to the United States in or about 1989. Mot., Ex. A, Decl. of Saba Rosario Ventura ("Def. Decl.") ¶ 3, Dkt. Entry No. 59-3 at 2–10.[2] He conditionally became a legal resident

---

[1] The Court assumes familiarity with the procedural history and facts of this case. For a detailed recitation of the facts and procedural history *see*, the Court's November 3, 2017, Memorandum and Order, dismissing the indictment, and April 5, 2023, Memorandum and Order, finding Defendant's detention pretextual and affirming dismissal of the indictment. *See*, Nov. 3, 2017, Mem. & Order ("Mot. M&O"), Dkt. Entry No. 28; Apr. 5, 2023, Mem. & Order ("Pretext M&O"), Dkt. Entry No. 49.

[2] Page numbers following Dkt. Entry Nos. denote the ECF page numbers assigned to the exhibit within the ECF entry.

alien in 1991. *Id.* His status became permanent in 1993. Not. of Removal of Conditional Basis of Lawful Permanent Residence, Dkt. Entry No. 59-3 at 12.

On July 19, 1995, Defendant was convicted in New York State Supreme Court, New York County, of three separate drug related felonies: two separate 1995 indictments for criminal sale of a controlled substance in the third degree involving crack cocaine pursuant to N.Y. Penal L. § 220.39, and one 1994 attempted criminal sale of a controlled substance in the third degree, involving crack cocaine pursuant to N.Y. Penal L. §§ 110 and 220.39. Mot., Ex. C, Certificates of Disposition ("1995 Disposition"), Dkt. Entry No. 59-3 at 14–16. On June 19, 1995, Defendant was sentenced to concurrent terms of 18 to 54 months of imprisonment on all three felony convictions. *Id.* at 17–19. Instead of serving time in prison, Defendant was accepted into and completed a program that provided treatment for substance abuse. Def. Decl. ¶ 5; Mot., Ex. D, Form I-213, Record of Deportable/Inadmissible Alien Saba Rosario Ventura, dated April 7, 2017 ("Defendant's Record"), Dkt. Entry No. 59-3 at 11-12.

Nearly a decade later, in 2004, Defendant pled guilty to Criminal Possession of a Controlled Substance in the Seventh Degree, in violation of N.Y. Penal L. § 220.03, a Class A misdemeanor. Def. Decl. ¶ 8; Mot., Ex. F, N.Y.C. Crim. Ct. Aff. and Cert. of Disp. No. 254889 ("2004 Disposition") at 195–96, Dkt. Entry No. 59-4 at 13–14. He was sentenced to a one-year conditional discharge and five days of community service, and his driver's license was suspended for six months. *Id.* at 195.

In August 2012, Defendant was arrested and charged with misdemeanor menacing and possession of a knife. Mot. Ex. H, NYC Criminal Court Record ECAB# 1369478 at 598, Dkt. Entry No. 59-4 at 20.[3] After his release from jail, U.S. Immigration and Customs Enforcement

[3] Defendant's affidavit gives a different year for his arrest. *See*, Def. Decl. The Court believes this discrepancy is simply a scrivener's error. In any event, the exact date of this arrest is immaterial.

("ICE") agents took him into custody for removal proceedings. Def. Decl. ¶ 11. On August 8, 2012, ICE instituted removal proceedings, serving Defendant with a Form I-182 "Notice to Appear" ("NTA"). *See*, Mot., Ex. I, NTA File No. A042-605-592, Dkt. Entry No. 59-4 at 22–24. The NTA alleged Defendant was removable from the United States pursuant to three provisions of the federal Immigration and Nationality Act ("INA") based on the three 1995 felony drug convictions as well as the 2004 misdemeanor possession conviction. *Id*.

First, the NTA asserted Defendant's removability pursuant to INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), for conviction of "an aggravated felony as defined in Section 101(a)(43)(B) of the Act [8 U.S.C. § 1101(a)(43)(B)], an offense relating to the illicit trafficking in a controlled substance, as described in section 102 of the [federal] Controlled Substances Act. . . ." *Id*. Second, it asserted that the attempted felony sale made him removable for conviction of "an aggravated felony as defined in section 101(a)(43)(U) of the Act [8 U.S.C. § 1101(a)(43)(U)], a law relating to an attempt or conspiracy to commit an offense described in [another part of the aggravated felony definition]." *Id*. Third, the NTA asserted that Defendant was removable pursuant to INA § 237(a)(2)(B)(i), 8 U.S.C. § 1227(a)(2)(B)(i), as a noncitizen who "at any time after admission . . . ha[s] been convicted of a violation of . . . any law or regulation of a State . . . relating to a controlled substance (as defined in Section 102 of the Controlled Substances Act, 21 U.S.C. [§] 802), other than a single offense involving possession for one's own use of 30 grams or less of marijuana." *Id.*

A series of deportation hearings were held before the Honorable Leo A. Finston, United States Immigration Judge ("IJ"). Mot. Ex., J, Tr. of Hearings in Removal Proceedings in File No. A042-605-592 ("Removal Tr."), Dkt. Entry No. 59-5. Throughout each of these hearings, Defendant appeared remotely from the Essex County Jail. *Id.* At the initial September 5, 2012,

hearing, Defendant appeared *pro se* and an interpreter was present. *Id.* at 467–69. The IJ continued the hearing to allow Defendant to retain counsel. *Id.*

At the subsequent September 20, 2012, hearing, Defendant's newly retained counsel, Eileen Collins Bretz, of the Bretz & Coven law firm, appeared. *Id.* at 471. No interpreter was present and Ms. Bretz "waived interpretation" for that day. *Id.* at 473. The IJ granted Ms. Bretz's request to adjourn the hearing until October 11, 2012, for "attorney preparation time." *Id.* at 472.

Immediately prior to the October 11, 2012, hearing, the U.S. Department of Homeland Security ("DHS") submitted Defendant's conviction records to the IJ and Ms. Bretz. *Id.* at 475–76. Ms. Bretz again requested and received an adjournment until November 16, 2012. *Id.* at 476–77.

On November 16, 2012, a different attorney from Bretz & Coven, Robert Lieber, appeared to represent Defendant. *Id.* at 480. An interpreter was present. *Id.* at 479–80. At this hearing, the IJ and Mr. Lieber focused on the possibility of Section 212(c) relief for Defendant. *Id.* at 480–82. Section 212(c) of the INA allows for a discretionary waiver of deportation for lawful permanent residents convicted of qualifying deportable offenses prior to 1996. *INS v. St. Cyr*, 533 U.S. 289, 294–96 (2001); *See also*, 8 C.F.R. § 1212.3(h)(3). The IJ asserted, and Mr. Lieber concurred that, only Defendant's 2004 conviction prevented him from seeking a discretionary waiver of deportation pursuant to Section 212(c), his only avenue to avoiding deportation. Removal Tr. at 481–82; *See also*, U.S.C. 8 § 1182(c).

At Mr. Lieber's request, the IJ adjourned the proceedings while Defendant filed a motion in state court for post-conviction relief ("PCR") to vacate his 2004 conviction. Removal Tr. at 481–84. Defendant sought to vacate this conviction on the ground that his counsel had not advised him of possible immigration consequences prior to his guilty plea in violation of the Supreme Court's holding in *Padilla v. Kentucky*, 559 U.S. 356 (2010). Removal Tr. at 481. Mr. Lieber

noted that Defendant's PCR attorney had not received the transcript of the plea and the Court file for the 2004 case, despite having requested these items over a month earlier. *Id.* at 481–82.

The IJ adjourned the hearing until December 17, 2012. *Id.* at 483. Prior to adjourning the hearing, the IJ voiced concern about the lack of progress on the PCR motion. *Id.* at 482 ("[P]erhaps you'll be able to come next time and [at] least show me that the motion was filed."). He specifically instructed Mr. Lieber that, upon recommencement, they would complete the pleadings and that Mr. Lieber must provide relief or protection applications or they would be deemed abandoned. *Id.* at 483.

When the deportation proceedings recommenced on December 17, 2012, a third Bretz & Coven attorney, Shari Astalos, represented Defendant. *Id.* at 486. Defendant again appeared remotely with an interpreter present. *Id.* at 486. Despite being aware of the Court's directive that relief or protection applications should be submitted that day, Ms. Astalos neither brought an application nor was she prepared to complete the pleadings or file a relief or protection application. *Id.* at 487–91. It further appears that Ms. Astalos had not reviewed the entire NTA prior to the hearing. *Id.* at 489. For example, she did not have the page of the NTA containing the deportation charges. *Id.* Rather, Ms. Astalos apparently received and reviewed this page for the first time at the proceeding. *Id.* Again, defense counsel sought a continuance. *Id.* at 488.

After reviewing the charges, Ms. Astalos conceded the factual allegations and the three charges of removability. *Id.* at 490. Ms. Astalos affirmed that Defendant's sole form of relief from removal was Section 212(c), pending the filing and ultimate outcome of Defendant's PCR application. *Id.* at 490–91. The IJ granted a continuance until January 7, 2013, at which time Defendant was to file his Section 212(c) application or he would "lose [his] opportunity to file it." *Id.* at 491.

On January 7, 2013, a new attorney from Bretz & Coven, Zlata Berman, represented Defendant. *Id.* at 493. At that hearing Mr. Berman submitted a Section 212(c) application via a Form I-191. *Id.* at 494; Mot., Ex. E, Respondent's Form I-191, File No. A042-605-592, Dkt. Entry No. 59-4 at 2–11. The IJ again adjourned the conference, until February 22, 2013, to allow time for resolution of the PCR motion in state court. Removal Tr. at 494–95. The IJ warned that, given the uncertainty of the disposition of Defendant's PCR motion, the IJ was unwilling to delay the proceedings in perpetuity. *Id.* at 500.

On February 22, 2013, the IJ denied Ms. Astalos's request for another continuance as well as Defendant's Section 212(c) application, finding Defendant's 2004 conviction made him ineligible for relief pursuant to Section 212(c). *Id.* at 499–502. The IJ then adjourned the conference to allow Defendant time to prepare any alternative application for relief. *Id.*

On March 13, 2013, a fourth attorney from Bretz & Coven, Disha Chandiramani, appeared for Defendant. *Id.* at 505. Ms. Chandiramani did not have any asylum claim to file and, instead, provided a copy of the state court PCR motion to the IJ, which Ms. Chandiramani represented had been filed in January and probably would take another three months to decide. *Id.* at 506–07. The IJ again adjourned the proceedings to allow Defendant to provide proof of the state court filing, over the objections of DHS. *Id.* at 507–09.

On April 5, 2013, Ms. Chandiramani advised the IJ that she was unable to obtain proof of the filing of the PCR motion in state court, but provided a copy of the supplemental brief for the motion and requested a continuance pending the outcome of the motion, which the IJ granted. *Id.* at 511-13.

On April 29, 2013, Defendant's counsel, Zlata Berman, again was unable to provide details as to the resolution of the PCR motion in state court and DHS objected to any further continuance. *Id.* at 515–16. The IJ scheduled the matter for resolution on the merits on May 21, 2013. *Id.*

On May 21, 2013, a final removal hearing was held. *Id.* at 517. The initial portion of the hearing, during which Ms. Astalos discussed the unresolved status of the state court PCR motion and requested another continuance, was conducted without a Spanish language interpreter. *Id.* at 518–20. Once the interpreter arrived, the hearing resumed, and the IJ informed Defendant of the discussion that had occurred before the interpreter arrived, including his denial of Ms. Astalos's request for a continuance. *Id.* at 520–21. The IJ then proceeded to issue an oral decision. *Id.* at 522. As Defendant apparently became disruptive during these proceedings, the IJ disconnected the connection and then had Defendant muted once he was reconnected. *Id.* at 523. It is unclear what the content of Defendant's disruption was because most of it went untranslated. *Id.* at 523–24. Ultimately, the IJ found Defendant removable because Section 212(c) relief had been repealed prior to Defendant's 2004 cocaine possession conviction and, thus, was not available to him. Mot., Ex. K, Oral Decision in Removal Proceedings at 457, Dkt. Entry No. 59-6, at 3. He also informed Defendant of his right to appeal that determination. Removal Tr. at 524.

On or about June 19, 2013, Ms. Astalos timely appealed the IJ's removal order to the Board of Immigration Appeals ("BIA"). *See*, Defendant's Record at 14; Mot., Ex. L, Form EOIR-26, Not. of Appeal from a Decision of an Immigration Judge, dated June 19, 2013 ("Not. of Appeal"), Dkt. Entry No. 59-6. The BIA denied the appeal on October 8, 2013. Mot., Ex. M, Not. of Decision of BIA ("Not. of Dec.") at 600–02, Dkt. Entry No. 59-6 at 21–23. In its order, the BIA characterized Defendant's appeal as seeking review of the IJ's denial of a continuance and found that the pending PCR did not provide good cause for a continuance. *Id.* (noting that Mr. Rosario did not "directly contest the finding of removability"). The BIA noted that, in a supplement to the Notice of Appeal, Defendant argued that his 2004 offense was not an aggravated felony. *Id.* at 601 n.1. However, Defendant's counsel did not brief this issue in his appellate brief. *Id.* The BIA found this argument irrelevant because the IJ characterized the conviction as involving possession

of a controlled substance, not as an aggravated felony, and ultimately did not address the merit of the argument. *Id.* at 602.

On October 30, 2013, following the BIA's denial of Defendant's administrative appeal, Defendant, proceeding *pro se*, filed a notice of appeal of the BIA's decision to the United States Court of Appeals for the Third Circuit. Mot., Ex. O, Not. of Appeal in Third Circuit Case No. 13-4277, Dkt. Entry No. 59-6 at 28–33. Still acting *pro se*, Defendant filed a request for an emergency stay of removal pending resolution of his appeal to the Third Circuit. Mot., Ex. P, Mot. Br. & Emergency Mot. for a Stay of Removal in Third Circuit Case No. 13-4277, dated October 30, 2013, Dkt. Entry No. 59-6 at 35–39.

At this point, Defendant no longer could afford counsel and did not receive the clerk's request for a filing fee. Def. Decl. ¶¶ 18, 21–22; Mot., Ex. Q, Letter from Clerk of Court Marcia M. Waldron, dated October 30, 2013, Dkt. Entry No. 59-7 at 2–3. On November 1, 2013, the Third Circuit denied Defendant's request for a stay of removal, and referred the request and the Government's motion to dismiss and opposition to the stay request to a panel. Mot., Ex. S, Third Circuit's Nov. 1, 2013, Order, Dkt. Entry No. 59-7 at 25; *See also*, Mot., Ex. R, Mot. to Dismiss & Opp'n to Emergency Mot. to Stay in Third Circuit Case No. 13-4277, Dkt. Entry No. 59-7 at 5–23. Defendant was deported in November 2013. *See*, Defendant's Record at 15; Mot., Ex. N, Warrant of Removal/Deportation for Saba Rosario, dated October 15, 2013, Dkt. Entry No. 59-6 at 25. After Defendant's deportation, the Third Circuit dismissed his appeal for failure to prosecute and failure to pay necessary fees on November 27, 2013. *See*, Dkt. Entry No. 59-7 at 29.

On April 7, 2017, Defendant was found attempting to reenter the United States in the Eastern District of New York. *See*, Indictment, Dkt. Entry No. 12. The subject indictment was filed on August 4, 2017. *Id.* The Court dismissed the indictment on November 9, 2017. *See*, Nov. 9, 2017, Electronic Order. After the Government's appeal of the Court's initial dismissal and the

Second Circuit's remand of dismissal with instructions, the Court again dismissed the indictment on April 5, 2023. Apr. 5, 2023, Mem. & Order, Dkt. Entry No. 49. However, on May 13, 2024, the Second Circuit reversed this dismissal and reinstated the indictment. *See*, May 13, 2024, Mandate, Dkt. Entry No. 52.

Defendant now seeks dismissal of the indictment pursuant to Rule 12 and 8 U.S.C. § 1326(d), collaterally challenging the 2013 removal order as unlawful and fundamentally unfair. Defendant contends that his Fifth Amendment rights were violated because the IJ and the BIA erroneously found him deportable and the process was unfair procedurally. Mot. at 14–22. The Government opposes, contending that Defendant's challenge is barred on a legal theory not presented to the IJ and that did not emerge in the case law until after Defendant's removal and, thus, Defendant cannot prove the original removal was the result of a procedural error. Opp'n at 7–11. In the alternative, the Government contends that Defendant cannot establish that he exhausted his procedural remedies as required by 8 U.S.C. § 1326(d). *Id.* at 11–14.

A status conference was held on April 8, 2025 (the "April 8 Conference"), at which the Court issued an oral ruling granting Defendant's motion to dismiss the indictment (the "April 8 Oral Order"). *See*, Minute Entry dated April 8, 2025 ("Parties advised that [D]efendant's motion is granted."). The Court further stated on the record at the April 8 Conference that a written opinion subsequently would be issued, and final judgment would not be entered until such opinion was filed on the docket. *Id.*

On April 9, 2026, the Second Circuit issued an opinion in *U.S. v. Mejia* which clarified that its ruling in *U.S. v. Sosa* with respect to judicial waiver of the mandatory requirements of §§ 1326(d)(1) and (2) was abrogated by the Supreme Court's decision in *U.S. v. Palomar-Santiago*. *See*, 173 F.4th 28, 30 (2d Cir. 2026) (citing 593 U.S. 321, (2021)); 387 F.3d 131 (2d Cir. 2004). The Court directed the parties to file supplemental briefs on the impact of *Mejia* on

this case. *See*, April 9, 2026, Electronic Order. Defendant filed his supplemental brief on May 1, 2026, and the Government filed its supplemental opposition on May 15, 2026. *See*, Def.'s Supp. Mem., Dkt. Entry No. 68; Gov't's Supp. Opp'n, Dkt. Entry No. 69.

**LEGAL STANDARD**

A defendant may move to dismiss an indictment for "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v). Pursuant to Rule 12, "[a]n indictment is sufficient if it 'first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *United States v. Stringer*, 730 F.3d 120, 124 (2d Cir. 2013) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)). Rule 12 allows a defendant to "challenge the lawfulness of a prosecution on purely legal, as opposed to factual, grounds." *United States v. Benitez-Dominguez*, 440 F. Supp.3d 202, 205 (E.D.N.Y. 2020) (internal quotation marks omitted).

8 U.S.C. § 1326(a) makes it a crime for a deported or removed noncitizen to enter, attempt to enter, or be found in the United States. In *United States v. Mendoza Lopez*, the Supreme Court held that an illegal reentry prosecution cannot rely on a previous deportation order to fulfill an element of the criminal offense charged if that order violated the noncitizen-defendant's due process rights and meaningful judicial review of the order was foreclosed. 481 U.S. 828, 837–39 (1987). Accordingly, the Supreme Court found that a noncitizen defendant can defend against removal by collaterally challenging the validity of the deportation order upon which the charge is predicated. *Id.* at 838–39; *See also*, *United States v. Gonzalez-Roque*, 301 F.3d 39, 45 (2d Cir. 2002).

Congress codified the holding of *Mendoza-Lopez* by enacting 8 U.S.C § 1326(d). *See*, *United States v. Palomar-Santiago*, 593 U.S. 321, 324 (2021). Pursuant to that statute, a noncitizen seeking to challenge a deportation proceeding collaterally as a defense to a criminal

prosecution for illegal reentry must demonstrate that: (1) he or she "exhausted any administrative remedies that may have been available to seek relief against the [removal] order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review"; and (3) entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d); *Palomar-Santiago*, 593 U.S. at 324–25; *United States v. Sosa*, 387 F.3d 131, 135–36 (2d. Cir. 2004). All three requirements must be established to challenge a removal order successfully, and a district court may not excuse a defendant's failure to satisfy any of the three requirements. *See*, *United States v. Mejia*, 173 F.4th 28, 30 (2d Cir. 2026); *Palomar-Santiago*, 593 U.S. at 326.

## DISCUSSION

### I. Reconsideration of the April 8 Oral Order

"[W]hether the case *sub judice* be civil or criminal, so long as the district court has jurisdiction over the case, it possesses inherent power over interlocutory orders, and can reconsider them when it is consonant with justice to do so." *United States v. LoRusso*, 695 F.2d 45, 53 (2d Cir. 1982). Jurisdiction over a case continues "until the entry of judgment." *Id.* A court's oral orders, including those resolving dispositive issues, are interlocutory and may be reconsidered prior to the entry of judgment. *Id.*; *See also*, *United States v. Washington*, 48 F.3d 73, 79 (2d Cir. 1995) (holding oral grant of a motion for acquittal was an interlocutory order "which the court has inherent power to reconsider and modify . . . prior to the entry of judgment" (internal quotation marks omitted)). "A court may be justified in reconsidering its own earlier decision in 'compelling circumstances, consisting principally of an intervening change in controlling law, new evidence, or the need to correct a clear error of law or to prevent manifest injustice.'" *United States v. Walsh*, 2016 WL 6603187, at *2 (E.D.N.Y. Nov. 7, 2016) (quoting *United States v. Carr*, 557 F.3d 93, 93 (2d Cir. 2009)).

As final judgment has not been entered, the Court's April 8 Oral Order granting

Defendant's motion to dismiss the indictment is interlocutory and may be reconsidered pursuant to the Court's inherent authority. *See*, *LoRusso*, 695 F.2d at 53. Here, reconsideration is appropriate as there has been an intervening change in controlling law. The Court's April 8 Oral Order relied, in part, on the Second Circuit's holding in *United States v. Sosa* and its progeny, where the Second Circuit held a court, in certain circumstances, could excuse a defendant's failure to satisfy the requirements of §§ 1326(d)(1) and (2). *See*, 387 F.3d 131; *United States v. Calderon*, 391 F.3d 370, 374–75 (2d Cir. 2004) ("*Calderon II*"); *United States v. Copeland*, 376 F.3d 61, 70 (2d Cir. 2004) ("*Copeland I*"). The Second Circuit's decision in *Mejia*, however, clarified that *Palomar-Santiago* abrogated the Second Circuit's interpretation of § 1326(d), and explained that a court may not excuse any of the mandatory requirements of § 1326(d). 173 F.4th 28, 35–36 (2d Cir. 2026).

Accordingly, as *Mejia* was decided after the Court's April 8 Oral Order and changed the legal standard applicable to Defendant's motion to dismiss, it constitutes an intervening change in controlling law. Thus, the Court reconsiders its April 8 Oral Order in light of *Palomar-Santiago* and *Mejia*.

## II. Defendant's Motion to Dismiss

Defendant moves to dismiss the sole charge in the indictment, illegal reentry, by collaterally challenging the underlying 2013 removability determination. Defendant contends that he satisfies all three requirements of § 1326(d). Specifically, he argues that: (1) he exhausted his administrative remedies in 2013 because the BIA addressed the classification of his drug convictions as aggravated felonies *sua sponte*; (2) he exhausted his administrative remedies in 2023 when he filed a motion to reconsider or reopen his removal proceedings with the BIA; (3) exhaustion in 2013 was not available to him because of the ineffective assistance of his counsel in not arguing on appeal that New York's § 2230.39(1) was facially overbroad; (4) he was denied

judicial review because: (a) he was wrongly deported after filing a petition for review in the Third Circuit in October of 2013, and (b) the BIA in 2023 failed to engage with the question of whether his motion to reopen was timely based on equitable tolling; (5) the 2012–2013 deportation proceedings were fundamentally unfair because Defendant was removed even though he was not subject to removal; and (6) the Second Circuit's decision in *Mejia* is incorrect. *See*, Mot. at 14–25; Def.'s Supp. Mem. at 1–5.

The Government counters that: (1) Defendant failed to exhaust in 2013 because he did not present the drug schedule overbreadth argument to the IJ or in his appeal to the BIA, and the BIA did not address this argument *sua sponte*; (2) Defendant's 2023 motion to reopen, which remains pending, does not satisfy the exhaustion requirement because he did not seek this administrative remedy until after he had unlawfully returned to the United States; and (3) Defendant's removal was not fundamentally unfair as his counsel's failure to present a viable legal challenge does not constitute a "fundamental procedural error." *See*, Gov't's Supp. Opp'n at 2–5.

As set forth below, the Court finds that Defendant has failed to satisfy §§ 1326(d)(1) and (d)(2). Accordingly, his motion to dismiss the indictment is denied.

**A. Section 1326(d)(1): Administrative Exhaustion**

Pursuant to Section 1326(d)(1), Defendant must show that he "exhausted any administrative remedies that may have been available to seek relief against the [removal] order." *Palomar-Santiago*, 593 U.S. at 325. "[E]ach of the statutory requirements of § 1326(d) is mandatory," and courts are not free to excuse any of them. *See*, *Mejia*, 173 F.4th at 35 (internal quotation marks omitted).

Defendant had a right to appeal the IJ's deportability determination to the BIA. *See*, 8 C.F.R. § 1240.53. This remedy was "available," in the sense that the BIA could have cured the errors Defendant now complains of by reversing the IJ's purportedly erroneous determinations.

*See*, 8 C.F.R. § 1003.1(d)(3)(ii) (BIA has authority to review questions of law *de novo*). Defendant timely appealed the IJ's decision to the BIA. *See*, Defendant's Record at 14. However, Defendant did not argue on appeal that the IJ failed to consider whether his three 1995 convictions pursuant to N.Y. Penal Law § 220.39 were aggravated felonies, or whether § 220.39 was categorically overbroad. *See*, Not. of Appeal at 5–8. Instead, the substance of his appeal solely focused on the IJ's denial of his request for a continuance, an argument the BIA rejected. *Id.*; Not. of Dec. at 1–2.

First, Defendant argues that, notwithstanding his counsel's failure to raise the drug schedule overbreadth argument with respect to his 1995 convictions on appeal, he nevertheless exhausted his administrative remedies in his 2013 appeal because his counsel did challenge the classification of his drug convictions as aggravated felonies, which caused the BIA to review *de novo* whether he was removable. Mot. at 23; Def.'s Supp. Mem. at 3. Thus, Defendant contends that the BIA did, in fact, reach the drug schedule overbreadth issue *sua sponte*, satisfying the exhaustion requirement of § 1326(d). Def.'s Supp. Mem. at 3 (citing *Ud Din v. Garland*, 72 F.4th 411, 420 (2d Cir. 2023)).

Defendant did not challenge the classification of his 1995 convictions as aggravated felonies in his appeal to the BIA. *See*, Mot. at 17. At best, Defendant's former counsel only challenged, "albeit ineptly," the IJ's determination that his 2004 criminal possession charge constituted an aggravated felony. *See*, Dkt. Entry No. 59-6 at 9; Def.'s Supp. Mem. at 3. Notwithstanding that Defendant then failed to include this argument in his appellate brief, this alone is insufficient to satisfy the exhaustion requirements of § 1326(d)(1). It is black letter law in this Circuit that § 1326(d)(1) requires complete "issue exhaustion." *See*, *Ud Din*, 72 F.4th at 419. As the classification of his 1995 convictions was not appealed to the BIA in any capacity, Defendant did not exhaust his available administrative remedies for these issues. *See*, *United*

*States v. Gonzalez-Roque*, 301 F.3d 39, 47 (2d Cir. 2002) ("The fact that a possible adjustment of status had been discussed in the hearings before the IJ does not mean that the issue was also raised on appeal. . . [H]ad the BIA been afforded the opportunity, it could have corrected any prejudicial errors.").

Nor did the BIA *sua sponte* review the IJ's removability determination in response to Defendant's "challenge" to the classification of his 2004 conviction. Indeed, the BIA specifically notes in its decision that Defendant did not challenge the finding of removability. *See*, Dkt. Entry No. 59-6 at 22. The questions of law that the BIA reviewed *de novo* were limited strictly to the IJ's denial of Defendant's request for a continuance. *Id.* Nowhere in the BIA's two-page decision does it reach or make any determination regarding the IJ's findings on removability or whether Defendant's 1995 convictions were categorically overbroad.

Second, Defendant argues that he exhausted his administrative remedies when he filed a motion to reconsider or reopen ("MTR") with the BIA on October 6, 2023, and subsequently appealed the BIA's denial of his MTR. *See*, Def.'s Supp. Mem. at 2. In his MTR, Defendant specifically raised the drug schedule overbreadth argument that he failed to raise in 2013. *See*, Dkt. Entry No. 68-1 at 8–12. The BIA denied Defendant's MTR as untimely on January 11, 2024, without addressing the merits of his drug schedule overbreadth arguments, and declined to exercise its *sua sponte* consideration authority to reopen or reconsider the removal proceedings. *Id.* at 23–24. Defendant appealed the BIA's denial of his MTR to the Third Circuit. *See*, Dkt. Entry No. 68-2. The Third Circuit granted Defendant's petition, vacated the BIA's denial of his MTR, and remanded the matter to the BIA for further proceedings. *Id.* at 9.

In certain circumstances, a defendant can satisfy the exhaustion requirement of § 1326(d)(1) by appealing a denial of a motion to reopen or reconsider removal proceedings. *See*, *United States v. Perez*, 330 F.3d 97, 100–01 (2d Cir. 2003). In *Perez*, the Second Circuit

found Perez had exhausted his claims notwithstanding his failure to appeal his underlying deportation order where he filed an MTR, which the BIA denied, and he subsequently appealed the denial. *Id.* at 101. The Second Circuit reasoned that, for due process claims, which the BIA does not have jurisdiction to adjudicate, such claims nevertheless must be presented to the BIA so it can "reopen the proceedings and, in appropriate circumstances, allow the petitioner to supplement the record with additional evidence." *Id.* Thus, because Perez "asked the BIA to do the one thing it could do: reopen the proceedings," he had satisfied the exhaustion requirement of § 1326(d)(1). *Id.*

The Second Circuit in *Perez* expressly reserved decision as to whether appealing the denial of an MTR is sufficient to exhaust claims other than due process claims. *Id.* ("Regardless of whether an appeal of a denial of a motion to reopen is sufficient to constitute exhaustion of all claims, an issue we need not reach. . . ."). Indeed, one year prior, the Second Circuit held in *Gonzalez-Roque* that procedural defects in deportation proceedings fell squarely within the jurisdiction of the BIA, and that a defendant could not "evade BIA review merely by labeling the claim a due process claim." 301 F.3d 39, 48 (2d Cir. 2002). Here, Defendant's MTR does not raise a due process claim, and merely asked the BIA to correct a legal error that fell squarely within its jurisdiction. *See*, Dkt. Entry No. 68-1 at 8–11. Defendant cites to no authority that supports extending *Perez* to encompass his drug schedule overbreadth claim, and the Court declines to do so.

Moreover, Defendant's own submissions show that the Third Circuit vacated the BIA's denial of his MTR and remanded for further proceedings, but Defendant does not indicate whether the BIA has issued a new decision. Even if an appeal of a denial of an MTR could exhaust Defendant's claims sufficiently, he apparently is still actively pursuing his MTR and cites to no

Second Circuit authority to suggest that a pending MTR constitutes sufficient exhaustion of administrative remedies.

Finally, Defendant contends "more specific exhaustion . . . was not 'available'" because of the ineffectiveness of his counsel in failing to raise it. Def.'s Supp. Mem. at 4. Defendant suggests that he could only appeal that "which counsel decides to argue," so anything that counsel chose not to argue was unavailable to him. *Id.*

Defendant's argument is foreclosed by *Mejia*, which endorses a functional availability standard drawn from *Ross v. Blake*. *See*, *Mejia*, 173 F.4th at 36 n.41 (citing 578 U.S. 632, 642 (2016) ("The ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'")). In *Ross*, the Supreme Court explained in the context of the Prison Litigation Reform Act of 1995 that an administrative remedy is unavailable where it: (1) has no possibility of some relief; (2) is "essentially 'unknowable;'" or (3) is unavailable by virtue of interference of another party. 578 U.S. at 643–44. "Available" remedies are those that are "capable of use for the accomplishment of a purpose, and that which is accessible or may be obtained." *Id.* at 642. In adopting the functional availability standard in *Mejia*, the Second Circuit rejected the argument that "availability" turns on a defendant's "subjective understanding of his rights." *Mejia*, 173 F.4th at 36 n.41.

Under *Ross* and *Mejia*, the supposed ineffectiveness of Defendant's former counsel does not make the drug schedule overbreadth argument "unavailable." Indeed, underlying Defendant's ineffective assistance of counsel claim is the premise that the argument could have been made, but it was not. In other words, the argument was functionally available in 2013, and Defendant's former counsel chose not to pursue it. Defendant's pending 2023 MTR further indicates that relief is still available. To hold exhaustion "unavailable" any time counsel chooses to omit a legal argument effectively would revive the judicial excusal of § 1326(d)(1)'s exhaustion requirement

that *Mejia* foreclosed. Finally, the unavailability by virtue of interference referenced in *Ross* refers to interference by an adverse party, not one's own counsel. *Ross*, 578 U.S. at 644 (discussing interference with a prisoner's administrative remedies by prison administrators).

Here, it is undisputed that Defendant failed to raise the *Minter* argument to the BIA on appeal. As his 2023 MTR is still ongoing and this administrative remedy was available to Defendant in 2013, the Court finds that Defendant failed to exhaust all available administrative remedies as required by § 1326(d)(1).

**B. Section 1326(d)(2): Denial of Judicial Review**

Even assuming, *arguendo*, that Defendant had exhausted his administrative remedies, the Court finds that Defendant also failed to show he was denied judicial review under § 1326(d)(2). Section 1326(d)(2) requires a defendant to demonstrate that "the deportation proceedings at which the order was issued improperly deprived [him] of the opportunity for judicial review." *See*, *United States v. Mendoza-Lopez*, 481 U.S. 828, 838 (1987) (establishing that "a collateral challenge to the use of a deportation proceeding as an element of a criminal offense must be permitted where the deportation proceeding effectively eliminates the right of the alien to obtain judicial review"). Following *Mejia*, compliance with § 1326(d)(2) is mandatory and may not be excused for any reason. *See*, *Mejia*, 173 F.4th at 35. Defendant first argues that his removal proceedings deprived him of judicial review because he was wrongly deported after filing his petition for review in the Third Circuit in October of 2013. *See*, Def.'s Supp. Mem. at 4. This contention fails for the reasons discussed below.

Prior to Congress passing the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), "courts of appeals lacked jurisdiction to review the deportation order of an alien who had already left the United States," and deportation while an appeal was pending did effectively eliminate access to judicial review of the underlying deportation proceedings. *Nnken v.*

*Holder*, 556 U.S. 418, 424 (2009); *Perez*, 330 F.3d at 101 n.3 ("[U]nder 8 U.S.C.A. § 1105a(c)(1993), the federal courts had no jurisdiction to conduct a direct review."). The IIRIRA, however, "lifted the ban on adjudication of a petition for review once an alien has departed." *Nnken*, 556 U.S. at 424. Thus, Defendant could have continued to pursue his appeal in the Third Circuit notwithstanding his deportation. Indeed, the Third Circuit ultimately dismissed Defendant's appeal for failure to prosecute and for failing to pay a docketing fee, not for lack of jurisdiction or mootness. *See*, Dkt. Entry No. 59-7 at 29. Defendant's failure to pursue his appeal cannot support a finding that he was deprived of judicial review.

Defendant also argues he was deprived of judicial review because the BIA failed to engage with the drug schedule overbreadth argument in his 2023 MTR, "confin[ing] [the Third Circuit] to faulting the BIA for its failures without passing on the merits of the 2013 proceedings." *See*, Def.'s Supp. Mem. at 5. Defendant confuses the requirements of § 1326(d)(2). The deprivation of judicial review must stem from Defendant's 2013 removal proceedings. *See*, *Mendoza-Lopez*, 481 U.S. at 838 ("[W]here the defects in an administrative proceeding foreclose judicial review of that proceeding, an alternative means of obtaining judicial review must be made available. . . ."). The supposed deprivation Defendant now advances stems from his 2023 MTR, *not* his 2013 removal proceedings and appeal that he abandoned. Nothing from the text of § 1326(d)(2) suggests that the statute extends to judicial review of a defendant's collateral attack on his removal proceedings.

It strains credulity to suggest that an untimely MTR filed ten (10) years after Defendant's removal and defaulted appeal is part of the "one full and fair opportunity to challenge a removal order" that the Second Circuit described in *Mejia*. 173 F.4th at 34 ("Congress sought to guarantee each defendant *one* full and fair opportunity to challenge a removal order. But neither *Mendoza-Lopez* nor § 1326 entitles a defendant who neglected the remedies available to him a second

opportunity to challenge that order collaterally in a later criminal proceeding.") (emphasis in original). Even if it did, at best, the BIA's error only delays judicial review of Defendant's claims. As Defendant concedes, the Third Circuit remanded his appeal to the BIA to consider the merits of Defendant's 2023 MTR. Should Defendant receive an unfavorable outcome, he is entitled to appeal that decision to the Third Circuit again.

As Defendant fails to satisfy either (d)(1) or (d)(2), the Court need not address fundamental unfairness under (d)(3). Accordingly, Defendant's motion to dismiss the indictment is denied.

## CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss the indictment is denied.

SO ORDERED.

Dated: Brooklyn, New York
October 28, 2026

/s/
DORA L. IRIZARRY
United States District Judge